*In re* MARRIAGE OF PEGGY LEE FRAIN, Petitioner-Appellee, and ROBERT J. FRAIN, Respondent-Appellant.

Fifth District   No. 5—92—0678

Opinion filed March 10, 1994.

Edward T. McCarthy, of Edwardsville, for appellant.

H. Gary Apoian, of Apoian, Ross & Funk, P.C., of East St. Louis, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Robert J. Frain (respondent) appeals the trial court's grant of a petition by Peggy L. Frain (petitioner) to enforce a marital settlement agreement provision relating to her one-half interest in the respondent's firefighter's pension. After approximately 20 years of marriage, the parties divorced in 1981. As part of a marital settlement agreement executed on February 20, 1981, it was agreed:

"The wife shall have a one-half interest in any pension *** or other retirement benefits acquired by the husband during the time of his employment with the City of East St. Louis, Illinois until the date of the signing of this agreement. No benefits shall be payable to the wife until such time as any benefits are due and payable to the husband.

Any and all benefits accruing to the husband subsequent to the date of the signing of this agreement through his employment shall be the sole and separate property of the husband[,] and wife shall have no title or interest therein. Nothing in this paragraph is meant to conflict with or negate the wife's right to receive one-half of all pension *** or other retirement benefits accruing to the husband through his employment with the City of East St. Louis, Illinois up to the date of the signing of this agreement when such payments based upon such accrued rights are due."

On October 1, 1988, the respondent retired after 26 years of service as a firefighter with the City of East St. Louis. Pursuant to section 4—109 of the Illinois Pension Code (Code) (Ill. Rev. Stat. 1981, ch. 108$^1$/2, par. 4—109 (now see 40 ILCS 5/4—109(a) (West 1992))), the respondent began receiving his pension. On May 21, 1991, the petitioner filed in the circuit court of Madison County a petition for rule to show cause, claiming that the respondent had failed to pay her the pension benefits due under the marital settlement agreement. The petitioner argued that she was entitled to her share of the pension because the respondent was receiving his pension, and under the terms of the agreement, she was entitled to her share once the benefits were "due and payable to the husband." On August 21, 1991, the respondent filed his response, asserting that he did not owe the petitioner any pension benefits until he reached the age of 60 in 1997. The respondent argued that because he had less than 20 years of service at the time the marriage was dissolved, and because section 4—109(b) of the Code (Ill. Rev. Stat. 1981, ch. 108$^1$/2, par. 4—109 (now see 40 ILCS 5/4—109(b) (West 1992))) provides that those with less than 20 years of service receive pension benefits at age 60, the petitioner was entitled to her share when respondent turned 60 in 1997.

On December 10, 1991, the circuit court found in favor of the petitioner and ordered the respondent to pay the petitioner $370.86 per month, which represented one-half of the respondent's pension benefits had he retired in 1980. The court further ordered the respondent to pay the petitioner $14,092.68, which represented the amount owed from October 1988 to December 1991. On December 20, 1991, the respondent filed a motion to reconsider. After a premature appeal to this court by the respondent, the case went back to the circuit

court. On September 9, 1992, the circuit court denied the respondent's motion to reconsider.

The respondent now appeals and we affirm. The issue in this case is whether the circuit court misconstrued the marital settlement agreement.

At the time the agreement was signed in 1981, the respondent had 18 years of service as a firefighter. Had respondent retired in 1981, he and the petitioner would not have received any pension benefits until he reached the age of 60 in 1997. (Ill. Rev. Stat. 1981, ch. 108½, par. 4—109 (now see 40 ILCS 5/4—109(b) (West 1992)) (firefighters who retire before obtaining 20 years of service are entitled to pension benefits at the age of 60).) However, when the respondent retired in 1988, he had 26 years of service as a firefighter. Even though the respondent was only 51 years old when he retired in 1988, he was entitled to pension benefits in 1988. Ill. Rev. Stat. 1981, ch. 108½, par. 4—109 (now see 40 ILCS 5/4—109(a) (West 1992)) (firefighters who are 50 years or older and have more than 20 years of service are entitled to pension benefits upon retirement).

The respondent relies on that provision in the agreement which reads: "Any and all *benefits* accruing to the husband *subsequent* to the date of the signing of this agreement through his employment shall be the sole and separate property of the husband[,] and wife shall have no title or interest therein." (Emphasis added.) Based on this provision, the respondent argues that by working more than 20 years, he accrued an additional benefit (*i.e.*, the ability to retire and collect his pension in 1988), which was subsequent to the signing of the marital settlement agreement, and as a result, he alone is entitled to the benefit. Following this interpretation, the petitioner would have to wait until 1997 before getting her pension benefits.

The petitioner, however, relies on that provision in the agreement which reads: "No benefits shall be payable to the wife until such time as *any benefits are due and payable to the husband*." (Emphasis added.) The petitioner argues that when the respondent began receiving pension benefits in 1988, this provision was triggered. Under this interpretation, the petitioner would be entitled to benefits starting in 1988.

At the outset, we reject the respondent's erroneous assertion that *In re Marriage of Hackett* (1986), 113 Ill. 2d 286, 497 N.E.2d 1152 (pensions are a form of deferred compensation and, if acquired during marriage, constitute marital property), and *In re Marriage of Roehn* (1991), 216 Ill. App. 3d 891, 576 N.E.2d 560 (same), "clearly require" reversal in this case. Those cases require no such result. In fact, those cases have no bearing on the resolution of this case because the

petitioner does not dispute that pension benefits are marital property. Therefore, the respondent's reliance on *Hackett* and *Roehn* is wholly misplaced.

Ordinary rules of contract construction apply to the interpretation of settlement agreements. (*In re Estate of Bresler* (1987), 159 Ill. App. 3d 535, 539, 510 N.E.2d 1057, 1060; *In re Estate of Bartlett* (1985), 138 Ill. App. 3d 102, 105, 485 N.E.2d 566, 567; *In re Marriage of Marquardt* (1982), 110 Ill. App. 3d 271, 273, 442 N.E.2d 267, 269.) The primary purpose of construction is to ascertain and, if possible, give effect to the intent of the parties. (*Bartlett*, 138 Ill. App. 3d at 105, 485 N.E.2d at 567.) Generally, the court looks to the language of the agreement to determine intent. (*Bartlett*, 138 Ill. App. 3d at 105, 485 N.E.2d at 567.) Where the terms of an agreement are clear and unambiguous, those terms must be given their ordinary and natural meaning. (*In re Marriage of Sherrick* (1991), 214 Ill. App. 3d 92, 96, 573 N.E.2d 335, 338.) An ambiguity exists where the words used by the parties are reasonably susceptible to more than one meaning or interpretation. (*Bartlett*, 138 Ill. App. 3d at 105, 485 N.E.2d at 567; *Sudler v. Sudler* (1972), 6 Ill. App. 3d 546, 548, 286 N.E.2d 113, 114.) Whether an agreement is ambiguous is a question of law. *Bresler*, 159 Ill. App. 3d at 540, 510 N.E.2d at 1060; *Bartlett*, 138 Ill. App. 3d at 105, 485 N.E.2d at 568; *In re Marriage of Kolb* (1981), 99 Ill. App. 3d 895, 900, 425 N.E.2d 1301, 1305.

As is evident, the marital settlement agreement is open to two different, yet plausible, contradictory interpretations. We agree with the petitioner's interpretation. The language of the agreement is clear that petitioner's right to receive pension benefits is triggered once those benefits "are due and payable" to the respondent. There is no set date in the agreement as to *when* the petitioner is to receive her pension benefits. The sole triggering event occurs when the respondent receives pension benefits, which occurred in 1988.

The petitioner sought and was awarded $370.86 per month, which represents one-half of the respondent's 1980 pension benefits. The respondent's additional eight years of service after his divorce allowed him to receive: (1) a larger pension and (2) benefits in 1988. The petitioner does not seek any increase in the amount of her pension benefits based upon the increase accruing to the respondent as a result of his additional eight years of service. Under the terms of the agreement, she would not be entitled to such an increase because it is an additional postdivorce benefit accruing to the respondent. Although the respondent received his pension in 1988 as a result of retiring with 26 years of service, those additional years of service merely *accelerated* the time as to when those benefits would be paid.

In short, the respondent asks that section 4—109(b) of the Code be read into the settlement agreement so as to fix the date the petitioner is to receive her share of the pension benefits. We decline to read such a requirement into the agreement. It is clear from the language used that the petitioner is entitled to her pension benefits once they are "due and payable" to the respondent.

For the foregoing reasons, we find no basis upon which to disturb the order granting pension benefits to the petitioner, and the circuit court's decision is hereby affirmed.

Affirmed.

GOLDENHERSH and RARICK, JJ., concur.