Third Division
February 9, 2011

Nos. 1-10-0212, 1-10-0554 & 1-10-0642 (Consolidated)

| | | |
|---|---|---|
| INNOVATIVE MODULAR SOLUTIONS, an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant and Cross-Appellee, | ) ) | |
| v. | ) ) | |
| HAZEL CREST SCHOOL DISTRICT 152.5, | ) ) | No. 06 CH 05767 |
| Defendant-Appellee | ) ) ) | |
| (Hazel Crest School District Finance Authority, | ) ) | Honorable Barbara A. McDonald, |
| Defendant and Cross-Appellant). | ) | Judge Presiding. |

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Presiding Justice Quinn and Justice Steele concurred in the judgment and opinion.

OPINION

In 2002, Hazel Crest School District 152.5 (the District) leased portable classrooms from Innovative Modular Solutions (IMS). The District agreed to pay a cancellation fee if it cancelled the leases before the termination of the lease terms. Later in 2002, due to the District's financial distress, the State invoked the Downstate School Finance Authority for Elementary Districts Law (School Finance Law) (105 ILCS 5/1F-1 *et seq.* (West 2004)) and gave the Hazel Crest School District School Finance Authority (the Authority) responsibility for the District's finances. In 2004, 2005 and

1-10-0212, 1-10-0554 & 1-10-0642 (Consolidated)

2006, the Authority cancelled the District's leases with IMS. The Authority did not direct the District to pay the cancellation fees established in the leases, and the District did not pay the fees. In 2006, IMS sued the Authority and the District, seeking a judgment declaring that the Authority could cancel the District's contracts only in accord with the cancellation provisions of those contracts, and seeking a judgment against the District for the amount of the cancellation fees. On cross-motions for summary judgment, the trial court granted a judgment in favor of the District, finding that the Authority ordered the District not to pay the cancellation fees and that the order made performance by the District legally impossible. The court separately granted IMS a judgment declaring that the Authority lacked the power to cancel contracts except in accord with contract cancellation provisions. The Authority appeals from the declaratory judgment in docket numbers 1-10-0554 and 1-10-0642; IMS appeals from the judgment in favor of the District in docket numbers 1-10-0212.

We vacate the declaratory judgment as moot, and we affirm the summary judgment entered in favor of the District. We find that once the State invoked the School Finance Law, which created the Authority and gave the Authority exclusive control over the District's finances, the District was divested of control over its finances and had no statutory authority to pay its debts. Thus, we find that the School Finance Law, which empowered the Authority to assume control over the District's finances, made performance by the District legally impossible. Accordingly, given our finding of impossibility, the issue concerning the extent of the Authority's power to cancel the District's leases becomes moot.

BACKGROUND

2

In July 2002, the District leased portable classrooms from IMS in four separate leases, with each lease pertaining to one of the four schools designated to receive the classrooms. The Palm Academy, Lincoln Elementary School, Frost Middle School, and Bunche Primary School used the classrooms. In each lease, the District agreed to lease the classrooms for a term of five years, with the District agreeing to pay certain amounts if the District cancelled the lease prior to the end of the five year lease term.

Due to the District's financial distress, the State invoked the statute that created the Authority, the School Finance Law (105 ILCS 5/1F-1 *et seq.* (West 2004)). According to the School Finance Law, the State gave the Authority the power "to exercise financial control over the district and to furnish financial assistance so that the district can provide public education within the district's jurisdiction while permitting the district to meet its obligations to its creditors and the holders of its debt." 105 ILCS 5/1F-25 (West 2004). The State also gave the Authority all powers "necessary to meet its responsibilities and to carry out its purposes and the purposes of this Article, including *** [the] powers *** [t]o make, cancel, modify, and execute contracts, leases, subleases, and all other instruments or agreements."105 ILCS 5/1F-25 (West 2004).

On February 18, 2004, the Authority wrote to IMS as follows:

"[T]he Illinois legislature has granted the [Authority] the extraordinary legal power to cancel and/or modify any Hazel Crest lease agreement. [Citation.] Consequently, the [Authority] has directed me to notify you that it is terminating the lease agreements for the modular buildings located at Lincoln and *** Palm Schools due to the District's inability to make payments under the leases."

3

On July 25, 2005, the Authority terminated the lease for Frost Middle School, and on August 31, 2006, the Authority terminated the lease for Bunche Primary School. Although the Authority cancelled the leases, it did not offer to pay IMS the sums due under the lease cancellation provisions, and the Authority did not direct the District to pay those sums.

On March 22, 2006, IMS sued the District and the Authority. In count I, IMS sought a judgment declaring that the Authority could not cancel the leases except in accord with the lease cancellation provisions. In count II, IMS prayed for a judgment declaring the School Finance Law unconstitutional if it permitted the Authority to nullify all of the parties' rights under the District's contracts. In count III, IMS sought damages from the District for breach of the leases relating to the Palm, Lincoln and Frost schools. IMS amended the complaint in January 2007 to add claims related to the Bunche lease.

The parties moved for summary judgment on the complaint. The Authority, in its brief, relied on *Faitoute Iron & Steel Co. v. City of Asbury Park*, 316 U.S. 502 (1942), as precedent establishing the extent of the State's power to affect the rights of a municipality's creditors without violating the constitutional prohibition against impairing the obligation of contracts. See U.S. Const., art. I, §10.

The parties and the court decided to focus first on the issue of whether the School Finance Law gave the Authority the power to nullify all of IMS's rights under the lease agreements. The court characterized the parties' motions as motions for "summary determination of a major issue of law within Count III." The court said:

"Under the Authority's interpretation [of the School Finance Law], it has unfettered discretion to cancel any contract it wishes at any time without any regard for or

4

protection of the interest of the other contracting party. Thus, if the statute is interpreted as the Authority urges, the statute is unconstitutional. The Court will interpret the statute as it must in the manner that renders it constitutional. The Court will therefore presume that the legislature intended that the Authority abide by the conditions set on cancellation contained in the contracts."

Accordingly, in its written order dated May 8, 2008, the court held that "the Authority did not act within the bounds of the law when it cancelled the leases at issue[.]" The order set a time frame for beginning written discovery.

In its subsequent motion for summary judgment, the District relied on section 1F-150(c) 150(c) of the School Finance Law, which provides that "No member, officer, employee, or agent of the district may take any action in violation of any valid order of the Authority." 105 ILCS 5/1F-150(c) (West 2004). District agents who violate the Authority's valid orders may face administrative discipline, suspension, or removal from office. 105 ILCS 5/1F-150(d) (West 2004). The District claimed that the Authority's decision to cancel the leases with IMS made it legally impossible for the District to perform its duties under the leases, including the duties upon cancellation of the leases. IMS responded that the orders cancelling the IMS contracts did not qualify as "valid order[s]" within the meaning of the School Finance Law because the Authority lacked the power to nullify all of IMS's rights under the leases.

The trial court noted that in its order of May 8, 2008, the court only ruled on the issue of the extent of the Authority's legal power to cancel the leases. The court found that the contracting parties did not contemplate the possibility of the Authority preventing the District from performing

its duties under the leases. The court held that because "the Authority's post-contract action and Illinois law prohibited the District's performance of the Lease Agreements, the District was excused from performance under the doctrine of commercial frustration." The court then addressed IMS's argument:

> "[F]inding the District liable herein because the Authority's order was subsequently deemed invalid would require the District to prejudge the validity of every order of the Authority, thereby disrupting the activities of both the Authority and the District. Because such prejudgment would have been inappropriate, the District had no choice but to follow the Authority's order. The District, therefore, is not liable for the termination of the Lease Agreements."

Accordingly, in a written order dated December 18, 2009, the court entered judgment for the District on count III of the complaint and set the case for a status hearing.

On January 15, 2010, IMS filed a notice of appeal, naming the order of December 18, 2009, as the subject of the appeal. The appellate court assigned that appeal docket number 1-10-0212.

On February 22, 2010, the trial court found that the judgment on count III mooted the issues remaining in count I and count II. Therefore, the court dismissed those counts with prejudice. IMS moved for clarification, and the court responded by vacating the order of February 22, 2010. Instead, by an order dated February 26, 2010, the court granted IMS a judgment on count I, declaring that the School Finance Law did not give the Authority the power to nullify all of IMS's rights under the leases. The judgment on count I still left count II moot, so the court dismissed that count with prejudice. The court noted that the order disposed of the case in its entirety.

6

The Authority filed a notice of appeal, file stamped March 2, 2010, challenging the order of May 8, 2008. The Appellate Court assigned the appeal docket number 1-10-0554. Also on March 2, 2010, the Authority filed a second notice of appeal, given docket number 1-10-0642, naming the final judgment of February 26, 2010, as the order appealed. The Authority sought only reversal of the declaratory judgment entered on count I of the complaint.

IMS amended its notice of appeal on March 17, 2010, listing the final judgment of February 26, 2010, as the subject of the appeal. This court consolidated the appeals.

ANALYSIS

Jurisdiction

The parties disagree about our jurisdiction over each of the separately docketed appeals. IMS contends that the order dated May 8, 2008, finally disposed of count I and count II of the complaint, so that the judgment entered on count III, by order dated December 18, 2009, finally disposed of the entire case, making timely the notice of appeal IMS filed on January 15, 2010. We disagree. In the order of May 8, 2008, the trial court entered no judgment on any count, and the court did not even mention count I or count II in its written order. The order of May 8, 2008, only resolved a significant issue underlying count III. It did not finally dispose of any count. The judgment entered on count III, on December 18, 2009, still left count I and count II unresolved, and the court's decision to set the matter for a status hearing shows that the court recognized, in the order of December 18, 2009, that it had not entered a final judgment disposing of the case. Because the court did not add language to make the judgment on count III separately appealable (see Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)), we have no jurisdiction over an appeal from the order dated December 18, 2009, and the

7

notice of appeal IMS filed on January 15, 2010, did not confer jurisdiction on this court. See *Ferguson v. Riverside Medical Center*, 111 Ill. 2d 436, 441-42 (1985).

Similarly, the Authority's appeal which challenged the order of May 8, 2008, failed to confer jurisdiction on this court because the notice of appeal did not list the final judgment entered on February 26, 2010, as the order appealed. See *Ferguson*, 111 Ill. 2d at 441-42. We dismiss the appeal given docket number 1-10-0554 for lack of jurisdiction. See *Ferguson*, 111 Ill. 2d at 441-42, 444.

In the appeal given docket number 1-10-0642, the Authority correctly named the final judgment of February 26, 2010, as the order appealed. We have jurisdiction to consider the Authority's challenge to the declaratory judgment in docket number 1-10-0642. S. Ct. R. 303 (eff. May 30, 2008). The amended notice of appeal in docket number 1-10-0212, which IMS timely filed and in which IMS named the final judgment of February 26, 2010, as the order appealed, confers jurisdiction on this court to consider IMS's appeal from the judgment entered in favor of the District on count III. S. Ct. R. 303 (eff. May 30, 2008).

Declaratory Judgment

The Authority argues that we should vacate the declaratory judgment because the judgment entered in favor of the District on count III mooted the issue of whether the Authority had the power to nullify all of IMS's rights under the leases. The court should not grant a declaratory judgment unless the judgment resolves an "actual controversy" concerning the parties' opposing interests. 735 ILCS 5/2-701(a) (West 2008); see *Northern Trust Co. v. County of Lake*, 353 Ill. App. 3d 268, 273 (2004). We review *de novo* the question of whether the parties faced an actual controversy at the

time of the judgment. *State Farm Mutual Automobile Insurance Co. v. City of Chicago*, 398 Ill. App. 3d 832, 833 (2010).

> In construing the actual controversy requirement, our supreme court explained:
>
> " 'Actual' in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events." *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375 (1977).

Where the determination of an issue will not affect the relief either party will obtain, the court should not consider the issue. *R.L. Polk & Co. v. Ryan*, 296 Ill. App. 3d 132, 136 (1998).

We agree with the Authority that the judgment entered in favor of the District on count III mooted count I and count II. With the judgment on count III, the trial court decided that IMS could not obtain any relief, even if the Authority lacked the power to nullify IMS's contractual rights when it canceled the leases. The determination of the Authority's power had no effect on IMS once the trial court decided that IMS could not recover from the District for breach of contract. We vacate as moot the judgment entered on count I, where the court held that the Authority had the power to cancel the District's contracts only in accord with contract cancellation provisions.

### Breach of Contract

We review *de novo* the trial court's decision to grant the District summary judgment on count

9

1-10-0212, 1-10-0554 & 1-10-0642 (Consolidated)

III. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001). IMS argues that the trial court misapplied the doctrine of legal impossibility or commercial frustration based on a misconstruction of the School Finance Law. The School Finance Law provides that the District must comply with the Authority's "valid order[s]," and any officer who fails to comply with a valid order exposes himself or herself to severe sanctions. 105 ILCS 5/1F-150(c),(d) (West 2004). The court decided that the District's officers must comply with all of the Authority's orders, regardless of validity, because the officers cannot determine the validity of the orders.

We find that we need not address IMS's argument. Performance became legally impossible once the State created the Authority, because the Authority alone controls the District's finances and the District no longer has the power to pay its debts without the Authority's approval of the payment. Our supreme court, in *People v. Deatherage*, 401 Ill. 25, 31-32 (1948), formulated the applicable principles:

"A community unit school district, like any other school district established under enabling legislation, is entirely subject to the will of the legislature thereafter. With or without the consent of the inhabitants of a school district, over their protests, even without notice or hearing, the State may take the school facilities in the district, without giving compensation therefor, and vest them in other districts or agencies. The State may hold or manage the facilities directly or indirectly. *** All this at the will of the legislature. The 'property of the school district' is a phrase which is misleading. The district owns no property, all school facilities, such as grounds, buildings, equipment, etc., being in fact and law the property of the State and subject

10

to the legislative will."

Thus, after the State created the District, the State retained the ability to limit the powers of the District, and even to divest the District of its powers. *Deatherage*, 401 Ill. 31-32. The State divested the District of the power to pay its debts when the State created the Authority and gave the Authority sole control over the District's finances.

"The doctrine [of legal impossibility] excuses performance where performance is rendered objectively impossible *** by operation of law." *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 403 Ill. App. 3d 1, 6 (2010). If the trial court were to grant IMS the relief it seeks, ordering the District to pay the cancellation amounts established in the leases, State law would prevent the District from complying with the court's mandate. No officer of the District has authority to write a check disbursing the District's funds without approval of the Authority. Only the Authority "exercise[s] financial control over the district." 105 ILCS 5/1F-25 (West 2004). Accordingly, the trial court did not err when it found, due to a legal impossibility created when the State invoked the School Finance Law, that the District lacked statutory authority to pay IMS its cancellation fees.

CONCLUSION

We dismiss the Authority's appeal in docket number 1-10-0554 because the order of May 8, 2008, was not final. We have jurisdiction to consider the Authority's appeal in docket number 1-10-0642 from the February 26, 2010, order, because that order disposed of all issues in the case. We vacate the declaratory judgment entered on count I of IMS's complaint, because the judgment in favor of the District on count III made the disposition of count I and count II moot.

The amended notice of appeal in docket number 1-10-0212, which references the February

11

26, 2010, order that disposed of all the issues in the case, gives us jurisdiction to consider IMS's appeal from the judgment in favor of the District on count III. We find that the Authority's control over the District's finances, pursuant to the School Finance Law, makes it legally impossible for the District to pay IMS the contractually agreed cancellation penalty. Accordingly, we affirm the judgment entered in favor of the District on count III; we find that the judgment on count III moots any issue concerning the extent of the Authority's power to cancel contracts, so we vacate the declaratory judgment entered on count I of IMS's complaint; and we affirm the dismissal of count II, concerning the constitutionality of the Authority's power to cancel contracts under the School Finance Law.

No. 1-10-0212, Affirmed.

No. 1-10-0554, Appeal dismissed.

No. 1-10-0642, Judgment vacated.