# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Innovative Modular Solutions v. Hazel Crest School District 152.5*, 2012 IL 112052

---

| | |
|---|---|
| Caption in Supreme Court: | INNOVATIVE MODULAR SOLUTIONS, Appellant, v. HAZEL CREST SCHOOL DISTRICT 152.5, Appellee. |

| | |
|---|---|
| Docket No. | 112052 |
| Filed | February 2, 2012 |
| Modified upon denial of rehearing | March 26, 2012 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The statute providing for the creation of separate entities to manage the finances of struggling public school districts does not provide for bankruptcy relief discharging lawful debts; and a finance authority so created could cancel leases early but had to pay the fees originally agreed to for so doing. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Barbara A. McDonald, Judge, presiding. |
| Judgment | Appellate court judgment reversed; circuit court judgment affirmed in part and reversed in part; cause remanded. |

Counsel on Appeal

Donald J. Kreger and Ruth E. Krugly, of Schiff Hardin LLP, of Chicago, for appellant.

Kenneth M. Florey, Nanci N. Rogers and Scott L. Ginsburg, of Robbins Schwartz Nicholas Lifton & Taylor, Ltd., of Chicago, for appellee Hazel Crest School District No. 152.5.

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Carl J. Elitz, Assistant Attorney General, of Chicago, of counsel), for appellee Hazel Crest School District School Finance Authority.

Justices

CHIEF JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1 This appeal involves the Downstate School Finance Authority for Elementary Districts Law (the Act) (105 ILCS 5/1F-1 *et seq*. (West 2004)), a statutory scheme permitting the creation of a separate entity to manage the finances of a public school district facing financial difficulty. Defendant Hazel Crest School District 152.5 (the District) leased portable classrooms from plaintiff Innovative Modular Solutions (IMS) under contracts including monetary penalties for early cancellation or default.[1] Ultimately, the state invoked the Act to create Hazel Crest School District Finance Authority (the Authority) to manage the District's finances. Thereafter, the Authority canceled the District's IMS leases before expiration. The Authority, however, did not authorize payment of the cancellation fees. Accordingly, the nonpayment of the early termination penalties gives rise to this dispute.

¶ 2 IMS filed a complaint in the circuit court of Cook County against the District and the Authority, seeking a declaratory judgment that the Act permitted the Authority to cancel the leases only in a manner consistent with the contractual language, including the cancellation provisions. IMS also sought a judgment against the District for the amount of the cancellation fees. On cross-motions for summary judgment, the court granted judgment in favor of the District on the cancellation fees, finding it was legally impossible for the District

---

[1]In this opinion, the terms "penalties" or "penalty" will be used only to refer generally to the contractual provisions between IMS and the District governing the early cancellation of the leases.

to pay the fees. The court also entered declaratory judgment in favor of IMS, finding that the Authority had to comply with the cancellation terms of the leasing contracts.

¶ 3     On direct appeal, the appellate court affirmed the judgment in favor of the District on the cancellation fees and vacated as moot the declaratory judgment in favor of IMS. 407 Ill. App. 3d 143, 150-51. For the reasons that follow, we reverse the appellate court's judgment and remand.

¶ 4                                            I. BACKGROUND

¶ 5     In July 2002, IMS, an Illinois corporation selling and leasing portable classrooms, and the District, an Illinois public school district, entered into four substantively identical lease contracts. Under those leases, IMS leased to the District four modular buildings to serve as classrooms at the District's Palm Academy School, Lincoln Elementary School, Frost Middle School, and Ralph Bunche School. Each lease was for a minimum 60-month term, from 2002 through 2007, and contained penalty provisions for early cancellation or a default by the District.

¶ 6     In October 2002, the District's board of education requested the State Board of Education to create a financial oversight panel for the District because it was suffering a major financial crisis. Ultimately, the State Board certified the District as being in severe financial difficulty and created a financial oversight panel to develop an emergency assistance and financial recovery plan.

¶ 7     In the meantime, the General Assembly enacted the Act's provisions permitting the creation of the Authority to administer the finances of a struggling school district, effective December 6, 2002 (105 ILCS 5/1F-1 (West 2004)). On December 9, 2002, the State Board created the Authority to administer the District's financial affairs.

¶ 8     Central to the issues in this appeal, the Authority was expressly enabled by the Act's provisions "[t]o make, *cancel*, modify, and execute contracts, leases, subleases, and all other instruments or agreements" for the management of a school district's finances. (Emphasis added.) 105 ILCS 5/1F-25(2) (West 2004). Relying on section 1F-25(2), the Authority mailed IMS letters terminating the District's four separate IMS leases for the modular buildings. Specifically, the leases for the Lincoln and Warren schools were terminated in 2004, the lease for the Frost school was terminated in 2005, and the lease for the Bunche school was terminated in 2006. It is undisputed that all of the leases were canceled prior to the contractually mandated 60-month term, and the District stopped payment on the leases. Nonetheless, the Authority did not authorize payment of the early cancellation fees.

¶ 9     In March 2006, IMS filed a three-count complaint against the District and the Authority. Count I sought a declaratory judgment that the Act permitted the Authority to cancel the leasing contracts only consistent with the terms of those contracts. Count II sought a declaratory judgment that, if the court found that the Act permitted the Authority to cancel unilaterally the existing contracts, the Act violates the constitutional prohibition against impairment of contracts in the United States and Illinois constitutions. Count III sought damages against the District for a breach of the leasing contracts. IMS later amended the complaint to add the Bunche lease claims.

¶ 10    The parties moved for summary judgment. During a May 2008 hearing, the trial court determined that the Authority did not act within the bounds of the Act when it canceled the leases. The court explained that, although the Authority had express statutory power to cancel the District's contracts, the General Assembly intended the Authority to cancel contracts consistent with the contractual terms. The court, however, did not enter judgment on any of plaintiff's counts, and scheduled discovery.

¶ 11    On December 18, 2009, the trial court entered judgment in favor of the District on count III, finding that it was legally impossible for the District to perform the leases without the consent of the Authority. Under section 1F-150 of the Act (105 ILCS 5/1F-150 (West 2004)), the District was prohibited from "[taking] any action in violation of any valid order of the Authority," and District agents who violated the Authority's orders could be subject to discipline, suspension, removal from office, or termination. The court found that because the parties did not contemplate the possibility of a governmental entity preventing the District's performance, the District was excused from performance of the lease contracts under the doctrine of commercial frustration. Accordingly, the court concluded that the District was not liable for any damages to IMS resulting from the early termination of the lease contracts.

¶ 12    On February 22, 2010, on the trial court's own motion, it found that its previous rulings, including the order on December 18, 2009, resolved all the issues in count I and mooted all issues presented in count II.

¶ 13    Plaintiff filed an emergency motion to clarify, however, and on February 26, 2010, the trial court entered a judgment on count I declaring that the Authority acted outside the bounds of the law when it canceled the lease contracts inconsistently with the contractual terms. The court dismissed count II "with prejudice as moot."

¶ 14    On direct appeal, the appellate court affirmed the trial court's judgment in favor of the District on count III, concluding that when the Authority took control of the District's finances under the Act it became "legally impossible for the District to pay IMS the contractually agreed cancellation penalty." The appellate court further found that the judgment on count III rendered the remaining counts moot, and vacated the trial court's declaratory judgment in favor of IMS on count I and affirmed its dismissal of count II. 407 Ill. App. 3d at 151.

¶ 15    This court allowed IMS's petition for leave to appeal. Ill. S. Ct. Rule 315 (eff. Feb. 26, 2010).

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, IMS contends that the appellate court's judgment violates the Act's goals, contravenes fundamental principles of contract law, and is unconstitutional. IMS asserts that the Authority's decision to cancel the leases without payment of the cancellation fees was unlawful, making the doctrine of legal impossibility inapplicable because it applies only when the action forming the basis for the alleged legal impossibility is valid.

¶ 18    IMS argues that the Authority's actions in this case were not valid because it was not authorized by the Act to "unilaterally cancel" the lease contracts without payment of the early cancellation penalties. If section 1F-25(2) of the Act (105 ILCS 5/1F-25(2) (West 2004))

-4-

permits the Authority to "cancel" contracts, the provision should be construed as permitting cancellation only consistent with the terms of the contract.

¶ 19 The District responds that the doctrine of legal impossibility applies here because it could not satisfy its contractual obligations to IMS under the leases when the Authority, the entity exercising sole control over the District's finances under the Act, canceled those leases. The District further responds that this outcome is constitutional and consistent with the plain language of the Act's provisions that permit the Authority to cancel the District's contracts and leases. Moreover, the Act does not allow, let alone require, District officials to prejudge the validity of the Authority's decision to cancel the lease contracts.

¶ 20 Similarly, the Authority responds that section 1F-25(2) of the Act permitted the Authority to cancel the leases and those cancellations were constitutional. Because the Authority's decision to cancel the leases here made performance of those contracts by the District impossible, warranting dismissal of count III, there is no actual controversy between the Authority and IMS in this case.

¶ 21 In our view, the crux of this appeal is the extent of the Authority's power under the Act to cancel the District's contracts. Specifically, as IMS argues, does the Act permit cancellation of the lease contracts by the Authority only consistent with the terms of the contracts, including the cancellation provisions? Alternatively, as the District and the Authority maintain, does the Act empower the Authority to cancel the lease contracts without payment of the early-cancellation penalties? In other words, the District and the Authority contend that the Act permits the Authority to cancel the contracts and essentially void the cancellation provisions. To resolve this dispute, we must construe the Act.

¶ 22 This court reviews *de novo* the construction of a statute because it presents a question of law. *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 160 (2010). Our goal when construing a statute is to determine and effectuate the legislature's intent, best indicated by giving the statutory language its plain and ordinary meaning. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009). We consider the statute in its entirety and must avoid a construction that renders any part of it meaningless or superfluous. *Weather-Tite*, 233 Ill. 2d at 390.

¶ 23 Initially, we outline relevant background information and provisions of the Act. Officially titled the "Downstate School Finance Authority for Elementary Districts Law," the Act became effective December 6, 2002. 105 ILCS 5/1F-1 (West 2004). The General Assembly explained in the Act's findings that public educational development is a fundamental constitutional goal of Illinois, and that the public school system is threatened when it faces financial difficulty. 105 ILCS 5/1F-5(a)(1) (West 2004). In addition, public school systems must have effective access to the private market to borrow short- and long-term funds because a sound financial structure is essential to the continued operation of any school system. 105 ILCS 5/1F-5(a)(2) (West 2004).

¶ 24 Thus, to promote financial integrity of school districts, the General Assembly found it necessary to provide for the creation of school finance authorities with the powers necessary to promote sound financial management and to ensure the continued operation of Illinois public schools. 105 ILCS 5/1F-5(a)(3) (West 2004). In accordance with its findings, the

General Assembly enacted the Act with the express intention "to establish procedures, provide powers, and impose restrictions to ensure the financial and educational integrity of the public schools, while leaving principal responsibility for the educational policies of public schools to the boards of education within the State." 105 ILCS 5/1F-5(b) (West 2004).

¶ 25    The Act permits formation of a school finance authority only by resolution of the State Board of Education. 105 ILCS 5/1F-15(a) (West 2004). Once formed, the express statutory purpose of a school finance authority is "to exercise financial control over the [school] district and to furnish financial assistance so that the district can provide public education within the district's jurisdiction while permitting the district to meet its obligations to its creditors and the holders of its debt." 105 ILCS 5/1F-25 (West 2004).

¶ 26    To achieve its stated goals, the Act gives a school finance authority broad powers to manage a school district's finances. For example, the Act authorizes a school finance authority to: (1) engage in litigation; (2) execute and cancel contracts; (3) purchase real or personal property; (4) appoint its own executive and financial officers; (5) transfer money to the district; (6) borrow money; (7) levy property taxes that otherwise could be levied by the district; (8) purchase or redeem its obligations, subject to certain provisions; (9) procure all necessary goods and services; (10) recommend annexation, consolidation, dissolution, or reorganization, to the State Board of Education; and (11) "any and all things necessary or convenient to carry out its purposes and exercise the powers given to it by [the Act.]" 105 ILCS 5/1F-25 (West 2004). A school finance authority's extensive control over the school district's finances includes the power to assume exclusive administration of cash accounts and bank accounts of the district, and the ability to direct the district to reorganize its financial accounts, management, and budgetary systems. 105 ILCS 5/1F-55, 1F-60 (West 2004).

¶ 27    The Act prohibits all employees, members, agents, and officers of a school district from entering into contracts, obligations, and liabilities without approval or authorization from the school finance authority. 105 ILCS 5/1F-150(a), (b) (West 2004). Those individuals must also comply with "any valid order" from the school finance authority. 105 ILCS 5/1F-150(c) (West 2004). A school district employee, member, agent, or officer who violates an order from the school finance authority is subject to administrative discipline, including, if warranted, suspension from duty without pay, removal from office, or termination of employment. 105 ILCS 5/1F-150(d) (West 2004).

¶ 28    Cognizant of the Act's underlying statutory scheme and purpose, we now turn to the Act's provisions empowering the Authority to cancel contracts, the issue presented here. The Act specifically authorizes the Authority to:

> "[M]ake, cancel, modify, and execute contracts, leases, subleases, and all other instruments or agreements necessary or convenient for the exercise of the powers and functions granted by [the Act], subject to [limitations for collective bargaining agreements]. The [school finance authority] may at a regular or special meeting find that the district has insufficient or inadequate funds with respect to any contract, other than collective bargaining agreements." 105 ILCS 5/1F-25(2) (West 2004).

The plain meaning of this statutory language supports a conclusion that the Authority is

empowered by the Act to cancel a school district's existing contracts, except for collective-bargaining agreements, including when the Authority determines that the school district has insufficient funds to pay a contract. This construction is entirely consistent with the Act's underlying goal of granting the Authority exclusive control of a school district's finances. Moreover, without this enabling statutory language, the Authority, as a nonparty, would have no ability to cancel a school district's existing contracts with third parties. Here, for example, the contested contracts are the leases between IMS and the District.

¶ 29    Nonetheless, we must still determine the extent of the Authority's cancellation powers under the Act. The Act itself is silent on the issue, only generally empowering the Authority to "cancel" contracts under section 1F-25(2). IMS argues that if the Act permits the Authority to cancel a school district's contract, the cancellation must be consistent with the contractual terms agreed to by the parties themselves under basic principles of contract law. In contrast, citing the dictionary definition of the term "cancel," the Authority and the District argue that section 1F-25(2) permits the Authority to cancel the contract unilaterally, regardless of the contract's cancellation terms.

¶ 30    After carefully reviewing the Act's provisions, we agree with IMS. Essentially, the Authority and the District argue that section 1F-25(2), permitting the Authority to "cancel" contracts, allows the Authority to void the District's contractual obligations and debts. This construction, however, contravenes the legislative intent underlying the Act.

¶ 31    Notably, the Act provides that the purpose of the Authority is "to exercise financial control over the [school] district and to furnish financial assistance so that the district can provide public education within the district's jurisdiction *while permitting the district to meet its obligations to its creditors and the holders of its debt*." (Emphasis added.) 105 ILCS 5/1F-25 (West 2004). This provision constitutes clear and unambiguous legislative intent that the Authority is meant to control and assist a school district with its finances in a way that allows the District to continue educating its students *and* honoring its existing obligations to creditors and debt holders. In light of this legislative intent, we necessarily reject a construction of section 1F-25(2) that would allow a school district managed by the Authority to avoid its contractual obligations. See *People v. Garcia*, 241 Ill. 2d 416, 427 (2011) (when construing a statute, legislative intent is paramount and controlling).

¶ 32    To the extent that the District and the Authority suggest that the District has insufficient funds to pay for the early cancellation penalties in the IMS leases, we note that the Authority is empowered by the Act to borrow money and levy property taxes that otherwise could be levied by the District. 105 ILCS 5/1F-25(6), (6.5) (West 2004). Likewise, when a judgment is obtained against a school board, "[t]he court may enforce obedience to such order by body attachment or by mandamus, requiring such board to levy a tax for the payment of the judgment." 105 ILCS 5/22-3 (West 2008).

¶ 33    Furthermore, neither the Act nor any other statutory provision, common law authority, or constitutional principle grants the Authority the power to discharge a school district's lawful debt. Thus, contrary to the implications of the District and the Authority, we will not construe the Act as providing bankruptcy relief for school districts facing financial difficulty.

¶ 34    Instead, because the General Assembly intended the Act, *inter alia*, to enable the

Authority to facilitate the District's efforts to meet its existing obligations to creditors and holders of its debt, we agree with IMS that section 1F-25(2) should be construed consistently with basic principles of contract law. Indeed, it is presumed that the General Assembly acts with the knowledge of existing common law when it enacts legislation. *Vancura v. Katris*, 238 Ill. 2d 352, 379 (2010). Generally, a contract may be canceled only under its own terms or through mutual agreement. *Copley v. Pekin Insurance Co.*, 111 Ill. 2d 76, 85 (1986). Here, it is undisputed that the District and IMS entered into four separate leasing contracts that contained extensive provisions addressing the way that the contracts could be canceled, including monetary penalties for early cancellation or default. Under basic principles of contract law, those contractual provisions, agreed to by both IMS and the District, must be honored.

¶ 35    Overlooking the legislative intent underlying the Act, the appellate court found it unnecessary to determine the extent of the Authority's power to cancel the District's contracts. Instead, the appellate court concluded that the doctrine of legal impossibility excused the District's performance of the lease contracts because the Act gave the Authority exclusive control over the District's finances, making the District's performance objectively impossible by operation of law. Consequently, the appellate court dismissed as moot any issue concerning the extent of the Authority's power to cancel the District's contracts. 407 Ill. App. 3d at 150-51.

¶ 36    The appellate court, however, erroneously ignored a key provision of the Act, namely, its express statement that the District must comply only with *valid* orders from the Authority. 105 ILCS 5/1F-150(c) (West 2004). Thus, contrary to the appellate court's determination, the proper construction of the Act's provision granting the Authority power to cancel contracts is critical. We have already determined that the Authority has the power to cancel a school district's contracts only consistent with the provisions of those contracts. Accordingly, the Authority's decision in this case to cancel the District's IMS contracts without payment of the contractual cancellation fees was invalid and not authorized under the Act.

¶ 37    The doctrine of legal impossibility, or impossible performance, excuses performance of a contract only when performance is rendered objectively impossible either because the subject matter is destroyed or by operation of law. *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 403 Ill. App. 3d 1, 7 (2010) (citing *Leonard v. Autocar Sales & Service Co.*, 392 Ill. 182, 187 (1945)). Here, the subject matter of the lease contracts, the modular buildings, have not been destroyed, nor has the Act rendered performance of the contracts objectively impossible by operation of law. To the contrary, the Act requires the Authority to cancel the contracts between IMS and the District consistent with their contractual terms. The doctrine of legal impossibility, therefore, is inapplicable here.

¶ 38    Finally, because we have determined that the Act requires the Authority to comply with the terms of the lease contracts between the District and IMS, we do not address IMS's constitutional challenge to the Act based on an alleged impairment of contracts. It is settled that courts should avoid constitutional questions when a case can be decided on other grounds. *People v. Alcozer*, 241 Ill. 2d 248, 253 (2011).

¶ 39                                    III. CONCLUSION

¶ 40        We conclude that the legislature intended the Act to permit the Authority to cancel a
school district's contract with a third party, but that cancellation must be consistent with the
contractual terms agreed to by the school district and the third party. Accordingly, in this
case, the Authority can cancel the District's leasing contracts with IMS, but the Authority,
acting solely in its capacity as an administrator of the school district's finances, must pay the
contractual fees for early cancellation or default agreed to by the District and IMS.

¶ 41        For the reasons stated above, we reverse the appellate court's judgment. We affirm the
trial court's declaratory judgment in favor of IMS and reverse its judgment in favor of the
District on count III. We remand to the trial court for proceedings consistent with this
opinion.


¶ 42        Appellate court judgment reversed;

¶ 43        circuit court judgment affirmed in part and reversed in part;

¶ 44        cause remanded.