NOTICE
Decision filed 06/24/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250630-U

NO. 5-25-0630

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| KRISTIE KUHNERT, | ) | Perry County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 24-DN-2 |
| | ) | |
| MONTE KUHNERT, | ) | Honorable |
| | ) | James W. Campanella, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice Cates and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's order requiring husband to pay wife's health insurance is affirmed where intent was shown in the marital settlement agreement.

¶ 2    Respondent, Monte Kuhnert appeals the circuit court's order issued pursuant to a rule to show cause, requiring him to pay petitioner, Kristie Kuhnert's health insurance until she reaches the age of 65. For the following reasons, we affirm the order.

¶ 3                                  I. BACKGROUND

¶ 4    Kristie, through counsel, filed a petition for dissolution of marriage against Monte on January 26, 2024, after almost 20 years of marriage. Therein, Kristie alleged irreconcilable differences and asked the court to classify the marital and non-marital property and disburse both

1

equitably. Monte, through counsel, filed an answer on February 13, 2024, admitting all the allegations in Kristie's petition for dissolution.

¶ 5 A negotiated settlement conference was held on November 15, 2024, and thereafter, the parties presented an agreed judgment of dissolution to the court that included the terms of an agreed marital settlement. The court clarified the proposed terms of the agreement with the parties that addressed real property, bank accounts, trusts, retirement accounts, vehicles, marital debt, and maintenance. As to maintenance, Monte confirmed that he agreed to pay Kristie a lump sum of $8.5 million over the next eight years and that the agreement terms were non-modifiable even if Kristie remarried or Monte's employment changed.

¶ 6 The court then addressed the proposed health insurance language which stated, "Monte shall maintain Kristie on his health insurance until she reaches age sixty-five and can receive Medicare. Once Kristie has secured Medicare coverage as quickly as possible after her sixty fifth birthday, Monte's obligation to provide this coverage will terminate." The following exchange occurred between the court, Monte's counsel, and Monte:

"THE COURT: Okay? You can't do this. They won't let you maintain her on your insurance unless you are married to her. How are you going to do that? Go ahead.

MS. RICH: Your Honor, we actually looked it up. Due to the duration of their marriage and his insurance plan through Wells Fargo—

THE COURT: His insurance plan will allow that?

MS. RICH: Yes.

THE COURT: Through whom, Wells Fargo?

MS. RICH: Yes.

2

THE COURT: Well, kudos to you because I did not know that. I try to learn something at least every day.

MONTE KUHNERT: I didn't think it would allow it.

THE COURT: That's amazing. You are sure of that?

MONTE KUHNERT: We are both trusting they are sure of that.

MS. RICH: We looked it up while we were sitting in the settlement room. I will tell the Court, I have another case where I am doing something similar and the State of Illinois actually if you have been married a specific amount of time, which they have over 30 years, will allow an ex-spouse to stay on the insurance.

THE COURT: So it's like COBRA but it goes on forever.

MS. RICH: Correct, or the duration of time specified in the order. And I will say this on the record, that has to be, I don't know, done within 30 days of the entry of the judgment in order for that to be applied.

THE COURT: So she has to make sure that the insurance company recognizes that they are still insuring her until she is 65 because of what I have signed here today. Well, that's interesting. I am glad we got it on the record because again I did not know that and I really appreciate the education. I have never heard of that. That is one heck of an insurance plan for you under these circumstances. Because going out and getting insurance on your own is extremely expensive. Of course, on your 65th in theory at least you will get Medicare."

¶ 7    After the court reviewed the remaining terms, including tax consequences, Monte confirmed that he wanted the court to sign the agreed judgment of dissolution. Thereafter, the court

3

found that grounds existed, the property settlement was fair and equitable and not unconscionable and executed the agreed judgment of dissolution.

¶ 8    On February 20, 2025, Kristie filed a petition for rule to show cause. Therein, Kristie alleged, *inter alia*, that Monte failed to adhere to the settlement agreement by refusing to provide her health insurance, in direct violation of paragraph J of the agreed judgment of dissolution of marriage. On February 25, 2025, the court issued a rule to show cause order setting the petition for hearing. On April 24, 2025, Monte filed a response denying the allegations and affirmatively stated that he "contacted his employer immediately following" the entry of the judgment regarding keeping Kristie on his insurance policy and "was informed at that time that he was unable to keep [Kristie] on his policy, and that if he wanted to continue to do so, he could appeal Wells Fargo's decision to remove her." Monte also stated that he appealed the decision, lost the appeal, and that his counsel sent Kristie's counsel correspondence on December 20, 2024, alerting her as to the failed appeal. The correspondence further stated that Kristie would no longer be covered on Monte's insurance policy as of January 1, 2025.

¶ 9    A hearing on Kristie's petition was held on April 29, 2025. The court obtained a copy of the November 15, 2024, transcript and then read the above-quoted portion of the transcript to the parties. Monte's counsel stated that Monte offered to pay for Kristie's insurance. Kristie's counsel stated that there was never any offer. The court asked why they were there if Monte said he would pay the amount. Monte's counsel then clarified that they offered to pay the amount he would have paid had Kristie remained on her health insurance. Ultimately, the court stated,

>    "We have a situation where he has to get her health insurance and it has to
> 
>    be equivalent to what she had and we are done and we have to do it within the next

4

30 days or he will be held in contempt for willful and contumacious disregard of [a] court order. So let's not do that."

The court set the matter for status on June 10, 2025, and denied reimbursement for attorney fees stating, "Under the circumstances, since you guys apparently dropped a communication somewhere, I am not going to find that this was such willful and contumacious disregard for [a] court order to allow attorney fees."

¶ 10    On April 29, 2025, the circuit court issued an order that stated,

"After argument and reviewing the transcript of proceedings *** specifically in regard to the Respondent Monte Kuhnert's responsibility to provide health insurance, and further reviewing the content of Page 8 of the Marital Settlement Agreement and the Judgment of Dissolution of Marriage filed November 15, 2024, the court finds unequivocal evidence that Respondent is to provide Petitioner with health insurance per said Order.

Respondent further consents in open court and agrees to provide such health insurance from whatever sources in an amount equal to at least what [Kristie] had through [Monte's] health insurance while she was married to him, within 30 days hereof, and to maintain health insurance in the aforesaid specified amounts until [Kristie] turns 65 and can receive Medicare."

The order also denied Kristie's request for attorney fees and set the case for a status hearing on June 10, 2025.

¶ 11    On May 21, 2025, Monte obtained new legal counsel. New counsel filed a motion to reconsider contending that the court's order requiring Monte to purchase health insurance for Kristie was contrary to the agreed judgment of dissolution, which required Monte "to maintain

[Kristie] on his health insurance which is impossible." The motion contended that the impossibility of the provision was discovered after the entry of the judgment and that nothing in the judgment required Monte to procure private health insurance for Kristie, as ordered by the court, which meant the court's ruling was erroneous. A response to the motion for reconsideration was filed on June 26, 2025. The response stated that Monte's claim of impossibility after the entry of judgment was refuted by the record which discussed the feasibility of maintaining Kristie on Monte's health insurance. It also addressed the court's response to counsel's assertion of impossibility which stated, "That's your problem. You are going to have to go out and get it for her. That's what you had me sign."

¶ 12 The motion to reconsider was heard on July 24, 2025. Monte's counsel argued that the word "maintain" meant "cause to continue" and that it was impossible for Monte to "maintain" Kristie on his health insurance following the divorce. Counsel argued that nothing in the paperwork or the judgment stated that Monte was "supposed to just go get health insurance." Counsel further argued that there was no contingency included in the judgment to address the possibility of Monte being unable to maintain the insurance. Kristie's counsel argued that everybody knew that Monte's initial lawyer was wrong and that was why the language was written the way it was in the agreement judgment and did not include the words "work insurance" only that Monte had to maintain Kristie on insurance. Kristie's counsel further noted that if Monte had done what he was supposed to do, Kristie would have already met her insurance deductible and would now have to re-meet her $6,000 deductible if he now obtained the insurance. Monte's counsel responded by arguing that the agreed order said to "maintain on his health insurance, not maintain on a health insurance policy, not maintain a private insurance policy." Monte's counsel further argued that since Kristie was receiving over $1 million a year, "she can pay her own insurance." Counsel also

6

stated that because the agreement was an impossibility, it was impossible to find Monte in contempt.

¶ 13    The court stated that it raised the issue at the initial hearing in November 2024 and Monte's counsel assured everyone that Monte could maintain Kristie on his health insurance. The court stressed that Monte agreed to maintain insurance on Kristie, it was not something that the court ordered. It noted that Monte was already reaping the benefit of only having himself on the Wells Fargo insurance and that he needed to maintain Kristie's health insurance. The court stated that Monte could not take an impossibility recognized at the time the order was entered and then fall back on that same impossibility as the basis of a reconsideration request. On July 24, 2025, the court issued a written order denying Monte's reconsideration request and admonished Monte to abide by the previously entered court order or possibly subject himself to a finding of contempt. Monte timely appealed.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, Monte first contends that the circuit court erred in its interpretation of paragraph J of the agreed judgment for dissolution of marriage and further contends that the court erred in ordering Monte to purchase private health insurance for Kristie. Additionally, Monte argues that the circuit court erred in denying his motion for reconsideration.

¶ 16    We initially note that neither the argument regarding the word "maintain" nor the affirmative defense of "impossibility" was presented at the rule to show cause hearing. Those arguments were only presented in the requested reconsideration. "It is well settled that the purpose of a motion to reconsider is to bring to the trial court's attention (1) newly discovered evidence not available at the time of the hearing, (2) changes in the law, or (3) errors in the court's previous application of existing law." *Triumph Community Bank v. IRED Elmhurst, LLC*, 2021 IL App (2d)

7

200108, ¶ 48. New legal theories or factual arguments presented at a motion to reconsider are forfeited. *Id.* However, forfeiture is a limitation on the parties, not the reviewing court, and we may overlook forfeiture where "necessary to obtain a just result or maintain a sound body of precedent." *Village of New Athens v. Smith*, 2021 IL App (5th) 200257, ¶ 22. Here, both reasons to overlook the forfeiture are evident. As such, we will consider the issues raised on appeal.

¶ 17    "A marital settlement agreement is construed in the same manner as any other contract." *In re Marriage of Dynako*, 2021 IL 126835, ¶ 15. "The primary purpose of construction is to ascertain and, if possible, give effect to the intent of the parties." *In re Marriage of Frain*, 258 Ill. App. 3d 475, 478 (1994). To ascertain the parties' intent, we review the language of the agreement. *Dynako*, 2021 IL 126835, ¶ 15. "Where the terms of an agreement are clear and unambiguous, those terms must be given their ordinary and natural meaning." *Frain*, 258 Ill. App. 3d at 478. "An ambiguity exists where the words used by the parties are reasonably susceptible to more than one meaning or interpretation." *Id.* Contract interpretation presents a question of law we review *de novo*. *Dynako*, 2021 IL 126835, ¶ 15.

¶ 18    The section at issue states that "Monte shall maintain Kristie on his health insurance until she reaches age sixty-five and can receive Medicare." That section further states that Monte's obligation to terminate the coverage only occurs after Kristie reaches the age of 65 and obtains Medicare. On appeal, Monte argues, citing Merriam-Webster's Collegiate Dictionary, that the word "maintain" is defined as "to keep in an existing state" and argues that the "language of the agreement is clear, Monte shall maintain Kristie on his health insurance, meaning, his current insurance with Wells Fargo."

¶ 19    We agree that the word "maintain" indicates a continuation to do some act. However, the language terminating Monte's agreement to maintain Kristie on his health insurance was for

8

Kristie to reach the age of 65 and obtain Medicare. Nothing in the marital settlement agreement required Monte to continue to work at Wells Fargo. Nor did anything in the agreement require Monte to remain on the health insurance offered by his employer. Instead, the agreement merely required Monte to maintain Kristie on his health insurance until she reaches the age of 65. The term "his" is possessive and shows ownership. In the marital settlement agreement, the term "his" is clarified by the words "health insurance." As such, our interpretation of the marital settlement agreement requires Monte to maintain Kristie on health insurance owned, and paid for, by him.

¶ 20    It is clear from our review of the settlement agreement that the intent of the parties was for Monte to continue to pay for Kristie's health insurance until she reached the age of 65 and was eligible for Medicare. As neither of those contingencies have occurred, our interpretation of the marital settlement agreement requires us to affirm the circuit court's order granting Kristie's rule to show cause petition.

¶ 21    Monte also argues on appeal that the marital settlement agreement language cannot be enforced due to the affirmative defense of impossibility. "The doctrine of legal impossibility, or impossible performance, excuses performance of a contract only when performance is rendered objectively impossible either because the subject matter is destroyed or by operation of law." *Innovative Modular Solutions v. Hazel Crest School District 152.5*, 2012 IL 112052, ¶ 37. The party claiming impossibility "must show that the 'circumstances creating the impossibility were not and could not have been anticipated by the parties, that the party asserting the doctrine did not contribute to the circumstances, and that the party demonstrate that it has tried all practical alternatives available to permit performance.' " *Mufaddal Real Estate Fund, LLC v. Vara School Professionals, Inc.*, 2024 IL App (3d) 220499, ¶ 32 (quoting *Illinois-American Water Co. v. City of Peoria*, 332 Ill. App. 3d 1098, 1106 (2002)). "[I]mpossibility requires that 'the events or

9

circumstances which he claims rendered his performance impossible were not reasonably foreseeable at the time of the contracting.' " *Id.* (quoting *YPI 180 N. La Salle Owner, LLC v. 180 N. La Salle II, LLC*, 403 Ill. App. 3d 1, 6-7 (2010)).

¶ 22    Here, Monte contends that he "did not contribute to the circumstances creating the impossibility" and he "tried all practical alternatives available to permit performance." We disagree. First, it was Monte's counsel who claimed such action was possible, despite the court's disagreement. "In the attorney-client relationship, clients are generally bound by their attorneys' acts or omissions during the course of the legal representation that fall within the apparent scope of their attorneys' authority." *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 9 (2004). Further, after counsel argued her disagreement with the court's interpretation of insurance law, Monte ratified the argument and his counsel's statement when he asked the court to sign the judgment with the language contained therein, despite the court's reticence with the proposal.

¶ 23    Second, Monte cannot meet the elements for a claim of impossibility. The circuit court anticipated the current situation and advised Monte and his counsel that it was highly unlikely that such action would be allowed by Monte's health insurance program. As such, Monte created the situation he now wants to classify as an "impossibility" despite being warned by the circuit court that it was likely inaccurate legal advice. Therefore, in addition to causing the issue, Monte was aware, by the court's own statements, that this situation was likely, undermining any finding that the parties did not anticipate this outcome.

¶ 24    In Illinois, "[a] settlement agreement will only be set aside if procured by fraud or coercion or if contrary to any rule of law, public policy, or morals." *In re Marriage of Stoker*, 2021 IL App (5th) 200301, ¶ 69. While impossibility is a rule of law that could set aside a contract, Monte fails to meet the required elements for any such claim. Accordingly, we cannot find that the agreement

10

to maintain Kristie on Monte's health insurance is an unenforceable term of the marital settlement agreement.

¶ 25    Finally, Monte also contends that the court erred by finding at the reconsideration hearing that it did not make a decision at the rule to show cause hearing, despite the court interpreting the terms of the MSA. The unartfully presented claim is neither supported by argument nor citation to authority. As such, we find the issue forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 26                                    III. CONCLUSION

¶ 27    For the above stated reasons, we affirm the circuit court's order granting Kristie's rule to show cause petition and denying Monte's request for reconsideration. As such, we order the appellate court clerk to lift the stay of enforcement of the circuit court's orders granted by this court on September 9, 2025.

¶ 28    Affirmed.