NOTICE
Decision filed 08/12/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200007-U

NO. 5-20-0007

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| ROBBYN C. BROWN, | ) | St. Clair County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 17-D-749 |
| | ) | |
| KIRK H. BROWN, | ) | Honorable |
| | ) | Alana I. Mejias, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the judgment of the circuit court regarding child support and the distribution of marital property where the circuit court's findings were not against the manifest weight of the evidence. We find that petitioner has forfeited on appeal her issue regarding that portion of the circuit court's judgment regarding the distribution of marital property concerning the Michigan accounts, waived her issue regarding dissipation, and that the issue of attorney fees is inapplicable.

¶ 2    Petitioner, Robbyn C. Brown, appeals *pro se* the circuit court's judgment of dissolution of her marriage to respondent, Kirk H. Brown, regarding the distribution of

1

marital property, child support, dissipation, and attorney fees. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4     Petitioner and respondent were married on February 11, 1995, and two children were born of the marriage. On November 3, 2007, the parties executed a postnuptial agreement and neither party contests the validity of the postnuptial agreement. The postnuptial agreement provided as follows:

"Recognizing their respective contributions to the marriage and their differing views on debt and asset acquisitions, and under no duress or coercion, [respondent] and [petitioner] agree as follows:

1. All vehicle purchase(s) and the related liability (financing) shall be the responsibility of the party making the purchase. This includes, but is not limited to the 2008 Infiniti G35 purchase made by [respondent] on or around October 27, 2007. The associated asset shall be considered an asset belonging to the party incurring and paying the debt.

2. All credit card debt and/or installment loans, with the exception of major home renovations or repairs shall be the responsibility of the person incurring the liability and any associated asset shall be considered an asset belonging to the party incurring and paying the debt.

2

Further in the event of legal separation or divorce, [respondent] and [petitioner] agree as follows:

3. All pensions and 401(k), 403(d), or similar retirement instruments shall be treated as non-marital property with each party being entitled to their respective pensions and 401(k), 403(d), or similar retirement instruments."

¶ 5    On August 17, 2017, respondent purchased a residence (Cedar Ridge residence) separate from the marital home with funds from his retirement accounts. On September 14, 2017, petitioner filed a *pro se* petition for legal separation in the circuit court. At the time petitioner filed for legal separation, the parties had two children: a nonminor child who was attending college, and a minor child, born June 2000. The petition for legal separation requested that the circuit court grant petitioner custody of the minor child and order respondent to pay child support, reimbursement for health insurance, and educational expenses for the nonminor child.

¶ 6    On October 6, 2017, respondent filed an answer to the petition for legal separation and a counterpetition for dissolution of marriage. Petitioner then retained counsel who entered an appearance on November 14, 2017. On November 21, 2017, the circuit court conducted a case management conference in which both parties appeared and were represented by counsel. The circuit court entered a written order the same day directing the parties to participate in mediation since the parties had not provided the circuit court with an agreed parenting plan. The parties participated in two sessions of mediation on December 5 and 18, 2017, and could not reach an agreement on a parenting plan.

¶ 7    On December 11, 2017, the circuit court entered an order directing respondent to pay temporary child support in the amount of $1000 per month beginning on December 15, 2017. The circuit court's order also directed the parties to equally pay any uncovered medical, dental, or vision expenses for the minor child and to continue to divide the nonminor child's college expenses equally. The circuit court's order further directed that petitioner would have the exclusive possession of the marital residence and that respondent would have the exclusive possession of the Cedar Ridge residence.

¶ 8    On June 5, 2018, counsel for petitioner filed a motion to withdraw indicating that petitioner no longer desired the attorney's representation. On the same day, the circuit court conducted a case management conference where it granted petitioner's counsel's motion to withdraw, and petitioner proceeded *pro se* throughout the remainder of the proceedings. On June 8, 2018, respondent filed a motion to terminate his child support obligation since the minor child had reached the age of majority.

¶ 9    On June 21, 2018, petitioner filed a motion to compel discovery compliance. Petitioner's motion to compel discovery compliance requested that the circuit court direct respondent to provide copies of all documents related to the "Michigan Bank Accounts" (Michigan accounts). The Michigan accounts concerned respondent's parents' revocable trust and the assets of respondent's mother for which petitioner alleged respondent was the trustee. Respondent objected to petitioner's requests for discovery information concerning the Michigan accounts. On August 28, 2018, the circuit court conducted a hearing on petitioner's motion to compel discovery along with respondent's motion to terminate child support.

4

¶ 10 After hearing testimony and reviewing statements from the Michigan accounts submitted by petitioner, the circuit court informed petitioner as follows:

> "THE COURT: But the link that you're making is nothing that I have the authority or jurisdiction to do. Even if you brought forth— If I granted your request— If I denied [respondent's] objection and I ordered him to produce these documents and you saw that he was taking money out of a pot that should in the future go the children, one, that—they are beneficiaries. They don't have any interest in that money. That money is not theirs until their grandmother passes away is the first thing.
>
> The second thing, if you were even able to prove that he was taking money from this pot in the trust I would have no authority to do anything about it in regard to the non-minor support or the educational expenses for the children because that is not my juris—that is not my jurisdiction. That is not the jurisdiction of this case."

¶ 11 The circuit court then granted in part, denied in part, and reserved in part petitioner's motion to compel discovery compliance. The circuit court granted petitioner's request for respondent to produce documents indicating the source of the funds deposited into one of the Michigan accounts in the name of the respondent, his mother, and the Brown Joint Trust, excluding social security administration and the State of Michigan retirement funds. The circuit court reserved ruling on three of petitioner's requests until respondent complied with the source of the funds and denied the remainder of petitioner's discovery requests.

¶ 12    Also at the August 28, 2018, hearing, the circuit court granted respondent's motion to terminate child support and ordered respondent's overpayments for July and August 2018 to be applied retroactively for child support due for October and November 2017. The circuit court denied petitioner's request for retroactive child support for September 2017. A written order consistent with the circuit court's rulings at the hearing was entered the same day. Petitioner did not file any further motions regarding discovery, the Michigan accounts, or child support. She also failed to file a motion to reconsider the circuit court's August 28, 2018, order.

¶ 13    A hearing on all remaining issues regarding the dissolution of marriage was scheduled on June 17, 2019. Petitioner failed to appear at the hearing and respondent made an oral motion for bifurcation. The circuit court granted respondent's oral motion for bifurcation, noting that there were no minor children and that neither party was seeking spousal maintenance. Respondent also made an oral request for attorney fees for the appearance at the hearing. The circuit court reserved ruling on respondent's request for attorney fees until respondent's counsel could provide a fee affidavit. On June 18, 2019, the circuit court entered a written order stating that it had granted respondent's request for bifurcation on June 17, 2019, and awarded a judgment of dissolution *nunc pro tunc* and reserved ruling on all remaining issues.

¶ 14    On August 22, 2019, the circuit court conducted a hearing on all remaining issues and entered a seven-page written order regarding its findings on August 27, 2019. In the interests of brevity, we will forego an initial recitation of the circuit court's finding and address the relevant findings as they relate to this appeal in the analysis below. On

6

September 25, 2019, petitioner filed a motion to reconsider and a motion to stay judgment. Petitioner then filed a supplement to her motion to reconsider on November 4, 2019.

¶ 15    On December 4, 2019, the circuit court denied petitioner's motion to reconsider and granted petitioner's motion to stay judgment except as it related to the nonminors' expenses. Petitioner now appeals the judgment of the circuit court, arguing that the circuit court erred in its distribution of the marital property and its determination of child support, dissipation, and attorney fees.

¶ 16                                    II. ANALYSIS

¶ 17    At the onset, we note that respondent argues that petitioner has waived several issues brought on appeal by failing to raise the issues at trial and/or failing to include the issues in a posttrial motion. Specifically, respondent argues that petitioner has waived the issues of the Michigan accounts, child support, dissipation, and attorney fees.

¶ 18    Although commonly interchanged, waiver is distinct from forfeiture. See *United States v. Olano*, 507 U.S. 725, 733 (1993). While forfeiture applies to issues that could have been raised but were not, waiver is the voluntary relinquishment of a known right. *Id.* The distinction is relevant here because, as we discuss below, we find that petitioner has forfeited her issue regarding the Michigan accounts, waived her issue regarding dissipation, and that her issue of attorney fees is inapplicable.

¶ 19    An issue is forfeited on appeal unless a party makes an objection at the time of the purported error and specifically raises the issue in a written posttrial motion. *Petre v. Cardiovascular Consultants, S.C.*, 373 Ill. App. 3d 929, 938 (2007); see also *In re Marriage of Rodriguez*, 131 Ill. 2d 273, 279 (1989). The purpose of this rule is to encourage

7

parties to raise their concerns in the circuit courts so that the lower courts have an opportunity to correct any alleged errors prior to appeal. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. While we acknowledge that the forfeiture rule is a limitation on the parties and not on reviewing courts, we will only override the consideration of forfeiture in furtherance of our responsibility to reach a just result and maintain a sound and uniform body of precedent. *People ex rel. Department of Human Rights v. Oakridge Healthcare Center, LLC*, 2020 IL 124753, ¶ 36.

¶ 20 Respondent first argues that petitioner has forfeited any issues regarding the Michigan accounts. Respondent notes that petitioner failed to file a motion to reconsider the circuit court's ruling on August 28, 2018, regarding the Michigan accounts and failed to raise the issue of the Michigan accounts at trial on August 22, 2019.

¶ 21 Petitioner argues that she had no obligation to present any evidence or to contradict respondent's evidence at trial since respondent had the burden of proof to demonstrate that the Michigan accounts were nonmarital property. Petitioner also argues that she raised the issue at trial when she reminded the circuit court that respondent had not established that the source of the funds in the Michigan accounts were his mother's funds. Finally, petitioner states that she filed a motion to reconsider on September 25, 2019, arguing that the Michigan accounts were presumptively marital property and requesting that the circuit court allocate the funds within the Michigan accounts in just proportions.

¶ 22 Petitioner's citation to the record in support of her argument that she raised the issue of the Michigan accounts at trial leads to the following dialogue:

8

"THE COURT: *** I believe the last issue that was in your position statement, [petitioner], that we haven't covered is this issue or argument of over or underpayment of the child support that was initially ordered December 11th of 2017. Is that something you're still pursuing?

MS. BROWN: I really don't want to nickel and dime, Your Honor.

THE COURT: It's your decision. If you want to withdraw that request, then—

MS. BROWN: I just want the record to reflect that he did not file an accurate financial statement, he did not disclose all of his liabilities, and he understated his income. And we discussed this previously with respect to those trust accounts in Michigan, bank accounts that he did not disclose initially. He had to—I had to issue him a 201(k) letter. And, Your Honor, one of the provisions of 703 with respect to the nonmarital property provides that it has to be established by clear and convincing evidence that its nonmarital. We operated on the premise that those were his mom's funds. He has not established that those were his mom's funds in there. He could have conceivably transferred those funds in there. While I'm paying these extra bills to help him reduce his credit card debt, it begs the question what was he doing with his money and why are those credit card debts going up so high? Why does he have roughly $50,000.00 in credit card debt?"

¶ 23 The above statement does not demonstrate that petitioner raised the issue at trial. Nowhere in the above statement did petitioner request that the circuit court address the

9

Michigan accounts or request a ruling regarding any aspect of the Michigan accounts. As such, the circuit court made no findings or rulings on the Michigan accounts at trial or within its written judgment.

¶ 24 The circuit court's findings on August 28, 2018, pertained to petitioner's discovery requests. After the circuit court's rulings on August 28, 2018, petitioner allowed discovery to close without filing a motion to reconsider the circuit court's August 28, 2018, order or bringing any additional discovery issue before the circuit court regarding the Michigan accounts. Instead, petitioner allowed the matter to proceed, as she stated above, on the premise that the funds within the Michigan accounts were the property of respondent's mother. As such, we find that petitioner has forfeited any issues related to the Michigan accounts on appeal for her failure to raise the issue at trial.

¶ 25 Respondent also argues that petitioner has forfeited her issue regarding child support. The circuit court's written order of August 28, 2018, directed that respondent's child support overpayments for July and August 2018 be applied retroactively for child support due for October and November 2017, and that retroactive support for September 2017 was denied. Petitioner did not file a motion to reconsider the circuit court's August 28, 2018, order. At trial, petitioner did attempt to revisit the issue of child support and respondent objected. The circuit court sustained respondent's objection and informed petitioner as follows:

"THE COURT: *** That order of August 28th, 2018 stands, and since that order have—sorry. I addressed the child support. I addressed the arrearage and the retroactivity, so the child support issue would have been

10

closed as of that date. [Petitioner] would have had 30 days from that point to set that motion aside or vacate it. So the issue of the overpayment or underpayment of child support is no longer an issue based on that order."

¶ 26 Respondent argues that petitioner forfeited her objection to the circuit court's order of August 28, 2018, by failing to file a motion for reconsideration and, as such, has forfeited the issue on appeal. We disagree. A notice of appeal is to be liberally construed, and an appeal from a final judgment will draw into question all prior final but nonappealable orders that produced the judgment. *In re Marriage of King*, 336 Ill. App. 3d 83, 86 (2002), *aff'd*, 208 Ill. 2d 332 (2003). The circuit court's order of August 28, 2018, was a prior final, nonappealable order concerning the over or underpayment of child support, and petitioner raised the issue in her motion to reconsider the circuit court's final judgment of August 27, 2019. As such, we find that petitioner has not forfeited her issue regarding child support on appeal.

¶ 27 Concerning petitioner's dissipation issue on appeal, petitioner filed a notice of intent to claim dissipation of marital assets in the circuit court on April 1, 2019. At trial, the following dialogue transpired:

"THE COURT: And unfortunately, that was before any proof of a breakdown of the marriage, and there's no dissipation claim on file, which would already have to be on file so—

[PETITIONER]: Actually, Your Honor, I did file a claim of dissipation.

THE COURT: Is that something you're pursuing?

[PETITIONER]: Well, that depends. If you guys—

11

THE COURT: Well, we're here today. We're set for trial. We've been set for trial multiple times. So, if you're going to pursue a dissipation claim, now is your time.

[PETITIONER]: Well, if they're willing to concede the property at 305, we can call this a wrap.

THE COURT: I don't believe they're willing to concede that.

[PETITIONER]: Okay.

THE COURT: That's why we're here.

[PETITIONER]: Okay. Well, just—

THE COURT: I have to make the decision.

[PETITIONER]: Okay. Just for the child support, Your Honor, and just to preserve it for later—

THE COURT: Okay, so we're not preserving anything for later.

[PETITIONER]: Okay.

THE COURT: This—

[PETITIONER]: This is it. Okay.

THE COURT: I'm ruling on all issues."

¶ 28 The circuit court inquired whether petitioner wanted to pursue her dissipation claim and petitioner declined to address the issue, thereby waiving her dissipation claim at trial. As such, we find that petitioner has waived this issue on appeal.

¶ 29 Finally, we address petitioner's issue on appeal regarding attorney fees. Petitioner argues that, in her motion to reconsider, she requested that the circuit court direct

respondent to provide an affidavit and proof of all payment respondent made to all counsel and third parties related to the dissolution so that his share of the marital estate could be reduced by his attorney fees. At trial, petitioner requested "roughly fifteen or $1600" in attorney fees and respondent requested attorney fees for the circuit court's hearing on June 17, 2019, that petitioner failed to attend. The circuit court denied both parties' requests for attorney fees. As such, petitioner did raise the issue of attorney fees at trial.

¶ 30    Petitioner's argument, however, in her motion for reconsideration and within this appeal, is based upon section 501(c)(2) of the Act. We first note that the Act does not contain a section 501(c)(2); however, based on petitioner's argument and the portion of the statute cited by petitioner, we can infer that petitioner refers to section 501(c-1)(2) of the Act. 750 ILCS 5/501(c-1)(2) (West 2018). Section 501 of the Act governs temporary relief in an action brought under the Act, and section 501(c-1)(2) of the Act specifically addresses the treatment of interim awards of attorney fees. *Id.*[1] No interim award of attorney fees was granted to either party in this matter.

¶ 31    As such, respondent is correct that petitioner could not have raised an objection at the time of the alleged error or raised the issue at trial. Therefore, we could find that petitioner has forfeited her issues regarding attorney fees on appeal, but instead, we find

---

[1]Section 501(c-1)(2) of the Illinois Marriage and Dissolution of Marriage Act provides in part: "Unless otherwise ordered by the court at the final hearing between the parties or in a hearing under subsection (j) of Section 503 or subsection (c) of Section 508, interim awards, as well as the aggregate of all other payments by each party to counsel and related payments to third parties, shall be deemed to have been advances from the parties' marital estate. Any portion of any interim award constituting an overpayment shall be remitted back to the appropriate party or parties, or, alternatively, to successor counsel, as the court determines and directs, after notice in a form designated by the Supreme Court. An order for the award of interim attorney's fees shall be a standardized form order and labeled 'Interim Fee Award Order.' " 750 ILCS 5/501(c-1)(2) (West 2018).

that the proper finding for this court is that petitioner's issue of attorney fees is inapplicable in this matter. We will now proceed to the merits of the remaining issues brought by petitioner on appeal.

¶ 32                              A. Child Support

¶ 33    Petitioner argues that the circuit court erred in its determination of child support since the parties presented different calculation of respondent's gross income. Specifically, petitioner states that the circuit court did not consider the Michigan accounts in its determination of respondent's gross income. Petitioner also argues that the issue of under or overpayment of child support could not have been resolved during the August 28, 2018, hearing since the issue remained reserved by the circuit court. Petitioner further argues that the circuit court abused its discretion in denying retroactive child support for September 2017, when her petition for legal separation was filed. Finally, petitioner argues that the circuit court failed to make a finding for the deviation from the statutory guidelines for the amounts that were inconsistent with the child support guidelines.

¶ 34    We first note, as discussed above, that any arguments related to the Michigan accounts have been forfeited by petitioner on appeal for her failure to raise the issue at trial. The circuit court made no findings regarding the Michigan accounts within its August 28, 2018, order on child support, final judgment of August 27, 2019, or for that matter, at any point during the litigation. The circuit court's only findings on the Michigan accounts related solely to discovery. As such, petitioner cannot now argue that the circuit court erred in failing to consider the Michigan accounts in its determination of respondent's gross income.

14

¶ 35 We will also not consider petitioner's argument regarding the circuit court's alleged failure to make a finding regarding a deviation from the statutory guidelines for child support or petitioner's argument that the circuit court abused its discretion in not awarding petitioner retroactive child support for September 2017. Under Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018), the appellant's opening brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and cohesive arguments presented. *In re M.M.*, 2016 IL 119932, ¶ 30. An appellant may not foist onto the reviewing court the burden of argument and research. *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37. If the points are not properly argued, Rule 341(h)(7) states that such points are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 36 In this matter, petitioner quotes section 505(a)(3.4) of the Act which requires the circuit court to make a written finding regarding any deviation from the statutory guidelines in awarding or modifying child support. 750 ILCS 5/505(a)(3.4) (West 2018). Petitioner's argument states that the circuit court "did not make a finding for a deviation from the statutory guidelines for child support for amounts that were inconsistent with the child support guidelines worksheet." Petitioner fails to cite to the record to demonstrate that the circuit court made a deviation or the basis of her contention that there was a deviation.

¶ 37 Petitioner also fails to support her contention that the circuit court abused its discretion in failing to award her retroactive child support for September 2017. In her opening brief, petitioner states "Did the trial court abuse its discretion in denying

15

retroactive child support for the month of September 2017 that was due from [respondent] back to the petition date" as an "issue" under "Child Support—Underpayments." Petitioner's argument portion under "Child Support—Underpayments," however, contains no further argument, contentions, or citations to the record demonstrating that the circuit court abused its discretion in denying retroactive child support for September 2017.

¶ 38 As such, we find that petitioner's arguments regarding the circuit court's alleged failure to make a finding regarding a deviation from the child support statutory guidelines and petitioner's argument that the circuit court abused its discretion in not awarding petitioner retroactive child support for September 2017 failed to clearly define or present cohesive arguments. Therefore, we find that petitioner has forfeited these arguments on appeal for her failure to comply with Rule 341(h)(7).

¶ 39 Petitioner next argues that the circuit court's August 28, 2018, order did not resolve the issue of over and underpayment of child support. Petitioner cites to a portion of the August 28, 2018, hearing in which the circuit court stated as follows:

"THE COURT: Okay. So the December 11, 2017 order reserves retroactive support along with any issue of under or overpayment. So that issue is still reserved and pending before the Court at a later point in time."

¶ 40 Petitioner argues that the above statement demonstrates that issue remained reserved and should have been addressed at trial. The circuit court's statement was made at the beginning of the August 28, 2018, hearing, and after addressing other issues, the circuit court went on to receive evidence and make an oral ruling—along with issuing a written order—terminating respondent's child support obligation and resolving the issue of

16

retroactive support along with any over or under payments made by respondent. Neither the circuit court's oral ruling at the hearing nor its written order of August 28, 2018, indicated that any issue regarding over and underpayment of child support was being reserved. Further, petitioner provides no support in her argument that the portion of the circuit court's statement regarding "a later point in time" could not have been referring to a time later in the hearing. As such, we find that the August 28, 2018, order resolved the issue of over and underpayment of child support and that the trial court did not err in failing to address the issue at trial on the basis that it was a reserved issue.

¶ 41                           B. Marital Property

¶ 42    The Act (750 ILCS 5/101 *et seq.* (West 2018)) governs the procedures for the dissolution of marriage including the distribution of marital property. Section 503(a) of the Act requires a circuit court to classify property as either marital or nonmarital prior to allocating the property. *Id.* § 503(a). We will not disturb a circuit court's classification unless it is against the manifest weight of the evidence. *In re Marriage of Winne*, 239 Ill. App. 3d 273, 280 (1992). After the property is classified as either marital or nonmarital, section 503(d) of the Act provides that marital property shall be divided in "just proportions" upon consideration of "all relevant factors," including various factors specifically enumerated in the Act. 750 ILCS 5/503(d) (West 2018). The division of marital property in "just proportions" does not mean a mathematically equal division, and a circuit court may award an unequal division where the circuit court has properly applied the statute. *In re Marriage of Marriott*, 264 Ill. App. 3d 23, 30 (1994).

17

¶ 43    Further, there is a rebuttable presumption that all property acquired by either party after the date of marriage but before the entry of judgment of dissolution is marital property, and that presumption can only be overcome by a showing of clear and convincing evidence. *In re Marriage of Didier*, 318 Ill. App. 3d 253, 275 (2000). The party claiming that the property is nonmarital has the burden of proof, and any doubts as to the nature of the property are to be resolved in favor that the property is marital. *Id*. A circuit court's distribution of marital property rests within its sound discretion and will not be disturbed on appeal unless the decision is against the manifest weight of the evidence. *In re Marriage of Marriott*, 264 Ill. App. 3d at 30. A decision is against the manifest weight of the evidence where the opposite result is clearly evident from the record, or the finding is arbitrary, unreasonable, or not based upon the evidence. *In re Marriage of Brown*, 2015 IL App (5th) 140062, ¶ 59.

¶ 44    Petitioner argues that the circuit court erred in its division of the marital property by disregarding the parties' respective salaries and petitioner's nonmarital financial and nonpecuniary contributions. Petitioner argues that she paid the initial costs of purchasing the marital home in the amount of $32,330, which included proceeds acquired through the sale of an investment property owned prior to the marriage. Petitioner argues that the circuit court erred in determining that her nonmarital monetary contributions to the marital property were gifts to the marital estate.

¶ 45    Petitioner further states that from 2002 through 2019, she paid a total of $437,721.06 in mortgage and extra principal payments, health insurance premiums and expenses, real estate taxes, homeowners insurance premiums, utilities and lawn care, grocery and

18

household expenses, private elementary school tuition, and school related expenses. Petitioner argues that respondent paid $168,604.80 in contributions towards the mortgage and other household related expenses from April 2003 through 2017. As such, petitioner argues that the circuit court erred in awarding respondent $121,500 of the marital residence's equity since it resulted in respondent receiving approximately 72% of the monies he contributed, while petitioner received approximately 22% of the money she contributed.

¶ 46    Concerning the initial costs of purchasing the marital home, the circuit court ruled as follows:

"As testified to, both parties agree with the appraised value of the home being $243,000.00. The marital residence is owned by both spouses. Even if one spouse has furnished all the consideration for it out of nonmarital funds, [it] will be presumed to be marital property absent clear and convincing rebutting evidence.

* * *

Now, there is an argument which [petitioner] is making is that even though that property was transmuted or those nonmarital funds were put into a marital asset, they should still retain their nonmarital characteristic because I, as in [petitioner], did not intend those funds to be a gift, and therefore, I should get that money back before the overall equity of the home is divided.

The only evidence that was presented today to rebut the presumption that —to rebut the presumption of that transmuting the assets from a nonmaterial

19

asset to a marital asset, the only evidence that was presented was [petitioner's] own testimony that it was not intended as a gift. There was nothing else. There was no testimony regarding whether or not she had advised [respondent] that she never intended this to be a gift. There was no documentation signed between the parties indicating that this is a gift—or I'm sorry, indicating that this is not a gift, so I don't believe that there's sufficient evidence to rebut the presumption that these funds were transmuted from nonmarital to marital property. I do believe that it was a gift to the marital estate."

¶ 47 Petitioner testified at trial as follows:

"Q. Okay. Now, that does show the $13,000.00 you put into the deposit, correct?

A. Correct.

Q. And that is the money you're claiming is nonmarital, is that correct?

A. It is nonmarital, that's correct.

Q. Okay. Now, this statement was a—or this bank account was a bank account you share with [respondent], correct?

A. I added [respondent's] name to my account—that was previously my account.

* * *

Q. And it's the bank account where your salary was deposited into, correct?

20

A. Correct.

Q. And that was salary you earned during the marriage, correct?

A. Yes.

* * *

Q. Okay. When you say 'In part,' you're also referring to that $13,000.00, correct?

A. Yes.

Q. That was put into that joint account, correct?

A. Without the intent of it being a gift, correct?

Q. But it was put into a joint account, correct?

A. Correct, clearly identifiable."

¶ 48 Petitioner also made the following argument to the circuit court concerning her nonmarital funds used for the purchase of the marital residence:

"[Respondent's counsel] asked me, Your Honor, about money that I had provided into the bank account from the sale of the nonmarital property. 750 ILCS 5-503 says that if those funds are identifiable and if they were not intended to be a gift. These funds were not intended to be a gift. They were to, one, we had to reduce that credit card debt and our expense that we needed to do. We had a lot of expenses related to the new home purchase and assets that we had to acquire. So this was never my intent for it to be a gift."

¶ 49 Petitioner's examination of respondent elicited the following testimony:

21

"Q. And did you provide any—you haven't provided any testimony—

or did you provide any payments towards this down payment of the house?

A. Toward the down payment of the marital home, not that I recall."

¶ 50    The circuit court correctly noted that the only evidence presented at trial was petitioner's own testimony that it was not intended as a gift. There was no documentation executed by the parties indicating that it was not a gift, and although petitioner could have examined respondent concerning the circumstances surrounding the nonmarital monetary contributions, petitioner only inquired whether respondent had provided any of the down payment on the marital residence. As such, we agree with the circuit court that petitioner failed to rebut the presumption that petitioner's nonmarital monetary contributions to the marital property were a gift to the marital estate by clear and convincing evidence. Therefore, we find that the circuit court ruling that petitioner's nonmarital monetary contributions were gifts to the marital estate was not against the manifest weight of the evidence.

¶ 51    Petitioner also argues that the circuit court failed to take into consideration the parties' respective salaries and her homemaker contributions in its determination of the distribution of the marital property. Petitioner bases this argument on the circuit court's award of $121,500 from the equity in the marital residence to respondent.

¶ 52    The parties agreed that the appraised value of the marital home was $243,000, and regarding the parties' contributions to the marital residence, the circuit court held as follows:

"It's all marital money, so it's all coming from the same pot. *** So the $243,000.00 is going to be divided equally between the parties as far as the equity."

¶ 53 According to petitioner, the circuit court's determination that the parties' respective salaries were marital income resulted in respondent receiving approximately 72% of the monies he contributed to the marital estate compared to the approximately 22% of the monies that petitioner contributed to the marital estate. As such, petitioner argues that the circuit court failed to properly apply the factors for the division of property under section 503(d)(1) of the Act when it failed to consider each party's respective salaries and her homemaker contributions.

¶ 54 In support of her argument, petitioner cites to *In re Marriage of Marriott*, 264 Ill. App. 3d 23, 30-32 (1994). Petitioner notes that the *Marriott* court affirmed the lower court's award of two-thirds of the marital residence's value to one party where the circuit court had found that the one party had made a greater contribution to the acquisition and preservation of the marital residence. The marital residence in the *Marriott* matter was obtained through a trust from one of the individual's parent prior to the marriage, and then a warranty deed was conveyed to both parties approximately five years after they were married. *Id*. Other factors, such as home improvements made through an interest free loan from one spouse to the other, were also considered by the *Marriott* court. *Id*.

¶ 55 As previously stated, the distribution of marital property rests within the sound discretion of the circuit court based upon its consideration of all relevant factors. *In re Marriage of Marriott*, 2015 IL App (5th) 140062, ¶ 59. The *Marriott* court considered the

specific factors under section 503(d)(1) of the Act as they applied to the marital property at issue in that case in making its determination that one party had made a greater contribution to the acquisition and preservation of the marital residence. Here, however, the circuit court did not find that either party had made a greater contribution to the marital residence. Petitioner does not cite to any portion of the *Marriott* case to demonstrate the same or similar facts which may have indicated that the circuit court made an incorrect finding in this matter that neither party made a greater contribution to the marital estate. Further, petitioner's only citation to the record in support of her position that she contributed more to the marital estate leads to a portion of petitioner's closing argument.

¶ 56    In this matter, the circuit court had the financial affidavits of both parties along with evidence demonstrating the parties' contributions to the marital residence and determined that both parties' contributions to the marital residence came from marital property. As such, the circuit court made an equal division of the equity in the marital residence. Other than petitioner's argument regarding the funds she paid towards the down payment of the marital residence, which we have already addressed above, petitioner has not demonstrated that any of the funds she contributed to the marital residence did not come from marital property.

¶ 57    Petitioner also argues that the circuit court failed to take into consideration her homemaker contributions in its determination of the distribution of the marital property. Petitioner cites to section 503(d) of the Act which provides that marital property shall be divided in just proportions upon consideration of all relevant factors, including the contribution of a spouse as a homemaker. 750 ILCS 5/503(d)(1)(ii) (West 2018). Petitioner

then cites to the record at "(Sup. C 11)," which is a portion of her position statement pursuant to Twentieth Judicial Circuit Court Rule 8.03[2] (St. Clair County Cir. Ct. R. 8.03 (Mar. 28, 2016)). In her position statement, petitioner stated that although she was employed, she was also a homemaker who cleaned the home, prepared the meals, taught the parties' children to read, and paid for the children to learn Spanish. She provides no indication within her position statement on a specific value that the circuit court should have placed on her contribution as a homemaker. Petitioner also fails to cite any relevant authority in support of her argument that the circuit court failed to consider her contributions as a homemaker.

¶ 58   On appeal, petitioner also fails to make any argument on the value she believes the circuit court should have placed on her homemaker contribution. Petitioner's argument is solely based on the circuit court's finding that respondent received half of the equity in the marital residence. We also note that petitioner's computations in determining the above percentage concerning the parties' contributions to the marital estate include monetary amounts that the circuit court ruled were gifts to the marital estate. As such, petitioner fails to cite any portion of the record that demonstrates that the circuit court failed to consider her homemaker contributions. Therefore, we find that the circuit court did not fail to take into consideration the parties' respective salaries and petitioner's homemaker contributions in its determination of the distribution of the marital property and that the circuit court's

_____

[2]The Twentieth Judicial Circuit Court Rule 8.03 requires that the parties shall file a statement of proposed resolution of all issues not less than seven days before the final hearing in any disputed case involving property, attorney fees, custody, allocation of parental responsibilities, parenting time, visitation, maintenance, or child support. St. Clair County Cir. Ct. R. 8.03 (Mar. 28, 2016).

finding regarding the equity in the marital residence was not against the manifest weight of the evidence.

¶ 59                              C. Postnuptial Agreement

¶ 60    Petitioner raises two issues concerning the parties' postnuptial agreement. First, petitioner argues that the circuit court erred in its interpretation of the postnuptial agreement by failing to allocate the outstanding installment loan in her name that she maintains was incurred to purchase the furnace and air conditioning unit (furnace) for the marital home during the marriage. Second, petitioner argues that the circuit court erred in its interpretation of the postnuptial agreement in determining that the Cedar Ridge residence purchased by respondent with funds from his retirement accounts was nonmarital property.

¶ 61    Concerning the issue of the installment loan on the furnace, the circuit court held as follows:

    "Further, all of the work that was done on the home, whether by [petitioner], or by [respondent], or by contractors paid for by one or either of the parties, all of those funds came from marital assets, increasing the value of the marital property. So I am not going to award one party a higher percentage of the marital property because of the testimony that they did more work or they may have paid for more work. It's all marital money, so it's all coming from the same pot."

¶ 62    Petitioner argues that the furnace repair/replacement fell within the exception of paragraph 2 of the parties' postnuptial agreement since it was a major home renovation or

26

repair. As such, petitioner argues that respondent should have been responsible for one-half of the related installment loan.

¶ 63    Respondent argues that petitioner provided a receipt that demonstrated the furnace repair/replacement but that petitioner offered no testimony or evidence that there remained an outstanding debt on the installment loan.

¶ 64    Paragraph 2 of the parties' postnuptial agreement states:

"2. All credit card debt and/or installment loans, with the exception of major home renovations or repairs shall be the responsibility of the person incurring the liability and any associated asset shall be considered an asset belonging to the party incurring and paying the debt."

¶ 65    The record reflects that petitioner testified at trial regarding the furnace as follows:

"There was a provision where there was a special they were running with the air conditioner and furnace, so I did that group thing to get that. I'm paying over that. It was a 72 month same as cash kind of situation."

¶ 66    An invoice from Archway Cooling and Heating for the installation of the furnace dated December 20, 2017, was admitted as an exhibit at trial. Therefore, we agree with petitioner that she presented evidence that the installation of the furnace was a major home renovation or repair that fell within the exception of paragraph 2 of the parties' postnuptial agreement.

¶ 67    The circuit court, however, did not base its finding regarding the installment loan for the furnace on the parties' postnuptial agreement. The circuit court instead determined that all repairs and/or improvement paid for by one or either of the parties came from

marital assets. The invoice from Archway Cooling and Heating for the installation of the furnace was dated December 20, 2017, and indicated that there was a balance due of $11,775. Petitioner testified that she was "paying over that." The parties' marriage was terminated on June 17, 2019, and as such, petitioner would have been making payments on the installment loan for 18 months before the marriage terminated.

¶ 68 Petitioner offered no evidence at trial concerning the amount of the payments on the installment loan other than "[i]t was a 72 month same as cash kind of situation." Petitioner offered no evidence of the outstanding balance on the installment loan, if any, at the time the parties' marriage terminated which could have demonstrated to the circuit court at trial that any portion of the installment loan was paid with nonmarital funds. The party claiming that the property is nonmarital has the burden of proof, and any doubts as to the nature of the property are to be resolved in favor that the property is marital. *In re Marriage of Didier*, 318 Ill. App. 3d at 275. Petitioner failed to carry her burden of proof at trial to demonstrate that any portion of the installment loan was paid for with nonmarital funds or that there remained any outstanding balance on the installment loan at the time of trial. As such, we find that the circuit court's determination that the installation loan for the furnace would not be deducted from respondent's share of the equity in the marital residence was not against the manifest weight of the evidence.

¶ 69 Next, petitioner argues that the circuit court erred in its interpretation of the postnuptial agreement when it determined that the Cedar Ridge residence purchased by respondent from his retirement account funds was nonmarital property. Petitioner argues that paragraph 2 of parties' postnuptial agreement referred to installment loans and not a

28

mortgage and that the parties' postnuptial agreement is silent with respect to real estate and mortgages. As such, petitioner concludes that the circuit court should have determined that the Cedar Ridge residence did not fall within paragraph 2 of the parties' postnuptial agreement.

¶ 70 Further, petitioner argues that the Cedar Ridge residence was purchased by respondent on August 17, 2017, with a $46,400 loan from the marital 403(d) account held in respondent's name. According to petitioner, paragraph 3 of the parties' postnuptial agreement concerning retirement accounts was not triggered until September 14, 2017, when petitioner filed for legal separation. As such, petitioner argues that, at the time respondent purchased the residence, respondent's 403(d) account was still marital property and that the circuit court should have awarded her one-half of the equity in the Cedar Ridge residence.

¶ 71 Respondent argues that the circuit court properly determined that the Cedar Ridge residence was nonmarital property since it was an installment type loan that fell within paragraph 2 of the parties' postnuptial agreement. Respondent argues that he was responsible for incurring the liability and paying the debt on the property and, as such, the Cedar Ridge residence was an asset that belonged to him and not the marital estate. Respondent further argues that paragraph 3 required all retirement accounts to be treated as nonmarital property in the event of a legal separation or divorce. Since the Cedar Ridge residence was purchased with funds from respondent's retirement account, respondent argues that it was purchased with nonmarital funds and, as such, was nonmarital property.

29

¶ 72 As noted previously, section 503(a) of the Act requires a circuit court to classify property as either marital or nonmarital prior to allocating the property. 750 ILCS 5/503(a) (West 2018). We will not disturb a circuit court's classification unless it is against the manifest weight of the evidence. *In Marriage of Winne*, 239 Ill. App. 3d at 280. Further, there is a presumption that property is marital unless there is clear and convincing evidence that the property falls within one of the exceptions listed in section 503(a) of the Act. 750 ILCS 5/503(b)(1) (West 2018). Section 503(a)(4) of the Act provides that marital property does not include property excluded from the marital estate by a valid agreement of the parties, including a premarital or postnuptial agreement. *Id.* § 503(a)(4).

¶ 73 The parties executed a postnuptial agreement on November 3, 2007, and neither party disputed the validity of their postnuptial agreement. As a reminder, paragraphs 2 and 3 of the parties' postnuptial agreement are as follows:

"2. All credit card debt and/or installment loans, with the exception of major home renovations or repairs shall be the responsibility of the person incurring the liability and any associated asset shall be considered an asset belonging to the party incurring and paying the debt.

Further in the event of legal separation or divorce, [respondent] and [petitioner] agree as follows:

3. All pensions and 401(k), 403(d), or similar retirement instruments shall be treated as non-marital property with each party being entitled to their respective pensions and 401(k), 403(d), or similar retirement instruments."

30

¶ 74 The circuit court held that the Cedar Ridge residence was respondent's nonmarital property based on the parties' postnuptial agreement but did not give a direct finding of whether the Cedar Ridge residence was nonmarital property based on paragraph 2, 3, or both. Because we find, as discussed below, that the circuit court could have properly determined that the Cedar Ridge residence was respondent's nonmarital property pursuant to paragraph 3 of the parties' postnuptial agreement, we will not address the parties' arguments regarding paragraph 2 of the parties' postnuptial agreement.

¶ 75 The circuit court interpreted paragraph 3 of the parties' postnuptial agreement as follows:

"The way that this is written and the terms that is uses, specifically in paragraph 3, the word 'all' and the word 'shall' is mandatory. So if I take [petitioner's] interpretation, as of the day a legal separation or divorce is filed, [i]n the event of a legal separation, all pension and 401(k) or similar retirement instruments shall be treated as nonmarital property. All of it. It does not say in the event of a legal separation or divorce, pensions, 401(k), 403(d), similar retirement accounts from that point forward will be deemed nonmarital property. Anything prior is going to marital. The terms in this postnup say 'all' and 'shall.'

* * *

The moment that a legal separation or divorce is filed, all of that account, every one of those accounts—it says 'all,' which is all encompassing, it is finite—'shall,' which is mandatory, be treated as nonmarital property.

31

So, the interpretation of this is that upon filing that legal separation, all pensions, all 401(k)'s, all 403(d)'s, all similar retirement instruments immediately become nonmarital property."

¶ 76 Ordinary rules of contract construction apply to the interpretation of settlement agreements, and the primary purpose of construction is to ascertain and give effect to the intent of the parties. *In re Marriage of Frain,* 258 Ill. App. 3d 475, 478 (1994). Where the terms of an agreement are unambiguous, intent must be determined solely from the language. *Id*. A court must also strive to avoid interpretations that would render any provision superfluous. *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 124 (2010). The construction of a contract presents a question of law subject to *de novo* review. *In re Marriage of Best*, 387 Ill. App. 3d 948, 949 (2009).

¶ 77 In this matter, we agree with the circuit court that paragraph 3 of the parties' postnuptial agreement regarding any retirement accounts stated that "all" such accounts "shall" be treated as nonmarital property in the event of a legal separation or divorce. As the circuit court pointed out, the agreement did not state that any retirement funds from the point of legal separation or divorce forward would be deemed nonmarital property. We also find that accepting petitioner's argument that the parties' retirement funds prior to her filing the petition for legal separation remained marital property would render the term superfluous since, after a legal separation or divorce, there would be little to no retirement funds for the parties to treat as nonmarital property and would defeat the purpose of ensuring that each party would retain their retirement accounts in the event of a legal separation or divorce. As such, we find that the circuit court properly determined that

paragraph 3 of the parties' postnuptial agreement required the entirety of parties' retirement accounts to be treated as nonmarital property. Therefore, we find that the circuit court did not err in its construction of the parties' postnuptial agreement.

¶ 78    Section 503(a)(6.5) excepts from marital property "all property acquired by a spouse by the sole use of non-marital property as collateral for a loan that then is used to acquire property during the marriage." 750 ILCS 5/503(a)(6.5) (West 2018). Since respondent utilized nonmarital property as collateral for the loan to acquire the Cedar Ridge residence, we find that the circuit court's determination that the Cedar Ridge residence was respondent's nonmarital property was not against the manifest weight of the evidence.

¶ 79    Based on the foregoing, we find that the circuit court's findings regarding child support and the distribution of marital property were not against the manifest weight of the evidence. We further find that petitioner forfeited on appeal her issue regarding the Michigan accounts, waived her issue regarding dissipation, and that her issue of attorney fees is inapplicable.

¶ 80                                III. CONCLUSION

¶ 81    For the foregoing reasons, we affirm the judgment of the circuit court.


¶ 82    Affirmed.